```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                        SOUTHEASTERN DIVISION


SHARON K. TACKETT,              )
                                )
        Plaintiff,              )
                                )
    v.                          )       No. 1:10 CV 49 DDN
                                )
MICHAEL J. ASTRUE, Commissioner )
of Social Security,             )
                                )
        Defendant.              )
```

### MEMORANDUM

This action is before the court for judicial review of the final decision of defendant Commissioner of Social Security denying the application of plaintiff Sharon K. Tackett for disability insurance benefits under Title XVI of the Social Security Act (Act), 42 U.S.C. §§ 1381, et seq. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 8.) For the reasons set forth below, the undersigned affirms the decision of the Administrative Law Judge (ALJ).


### I. BACKGROUND

On September 27, 2006, plaintiff applied for disability insurance benefits under the Act, alleging an onset date of September 30, 2005 due to cellulitis,[1] diabetes mellitus, thyroid problems, and high blood pressure. (Tr. 85-91, 116.) Her claim was denied, and she requested a hearing before an ALJ.[2] (Tr. 63-67.)

---

[1] Cellulitis is inflammation of subcutaneous, loose connective tissue (formerly called cellular tissue). Stedman's Medical Dictionary 343 (28th Ed. 2006).

[2] Missouri is one of several test states participating in modifications to the disability determination procedures which apply in this case. 20 C.F.R. §§ 404.906, 404.966 (2007). These modifications include, among other things, the elimination of the reconsideration step. See id.

On April 25, 2008, following a video hearing, the ALJ found plaintiff was not disabled. (Tr. 10-21.) On January 19, 2010, the Appeals Council denied her request for review. (Tr. 1-3.) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II.  MEDICAL AND OTHER HISTORY

On May 12, 2005, plaintiff was seen at Crosstrails Medical Center (Crosstrails) in Advance, Missouri, for an evaluation of her diabetes, obesity, and dyslipidemia or high cholesterol. (Tr. 153.) She was 5 feet 4 inches tall and weighed 228 pounds. Her blood pressure was 126/82. (Tr. 153.) She was in no acute distress and had normal breath sounds. (Tr. 153.) An examination of her back was also normal and she had no motor or sensory deficits. (Tr. 154.) One week later, plaintiff's back was again normal and she had normal breath sounds. (Tr. 151.) She also had a normal mood and affect and no motor or sensory deficits. (Tr. 152.) She was a one-pack-per-day smoker. (Tr. 153.)

On June 3, 2005, plaintiff continued to have a normal back examination, normal mood and affect, and normal breath sounds. Her gait was also normal. (Tr. 149-50.)

On December 7, 2005, she was seen at Crosstrails for follow-up for her diabetes. She completed a depression screening questionnaire and reported feeling depressed and having difficulty concentrating. (Tr. 210.) Plaintiff's doctor noted that her diet was uncontrolled and she was not exercising. Her blood pressure was 118/66. She had a normal back examination and normal breath sounds. (Tr. 211.) Her mood and affect were normal and she had no motor or sensory deficits. Her doctor encouraged her to improve her diet and exercise and to check her glucose regularly. (Tr. 212.)

Plaintiff was seen several times at Crosstrails in March 2006, and consistently had a normal mood and affect, normal breath sounds, and a normal back examination. (Tr. 200-09.) On March 10, her diabetes and hypertension were uncontrolled because she was not taking her medications regularly and "didn't care." (Tr. 206.) On March 21, she was seen at Crosstrails with complaints of anxiety and depression. She had recently

been started on Prozac, an antidepressant, and it was increased at that time. (Tr. 202-03.)

Plaintiff was seen at Crosstrails three times in April 2006. (Tr. 193-99.) Her blood pressure readings ranged from 120/70 to 130/70, and she continued to have normal back examinations, normal mood and affect, and normal breath sounds. (Tr. 194-99.)

By May 19, 2006, her glucose readings had improved and she was in no acute distress. (Tr. 191.) Her breath sounds were normal and she had a normal mood and affect. (Tr. 191-92.) Her blood pressure was 124/70. (Tr. 191.)

On May 25, 2006, her glucose level was fluctuating. She claimed to be following a diabetic diet but had gained nine pounds in the past month. Treatment notes state she showed poor compliance with a diabetic diet and exercise. However, her back examination was normal and she had normal breath sounds. Her mood and affect were normal. Her doctor "strongly encouraged [she] improve diet to regulate glucose." (Tr. 189-90.)

On June 28, 2006, plaintiff's compliance with diet and exercise continued to be "poor." (Tr. 187.) Upon examination, her back was normal and her extremities were non-tender. She had normal breath sounds, a normal mood and affect, and no motor or sensory deficits. (Tr. 188.)

On August 8, 2006, plaintiff was diagnosed with an abscess in her left armpit. Her blood pressure was 122/78. She had a normal mood and affect and her extremities were non-tender. (Tr. 186.) August 29, 2006 records showed her extremities were non-tender and her mood and back were normal. (Tr. 181-84.) She continued to smoke one to two packs of cigarettes per day. (Tr. 181.)

Plaintiff was seen in the emergency room at St. Francis Medical Center on September 6, 2006, after falling down three stairs and injuring her left shin. (Tr. 158.) She was diagnosed with a left leg contusion or bruise. (Tr. 160.)

From October 6 to December 15, 2006, plaintiff had several follow-up visits for her leg. (Tr. 161-80, 228-45.) In September 2006, she continued to have a normal mood and affect and normal back

examinations with a full range of motion. (Tr. 166, 175, 180, 189.) An x-ray and ultrasound study of her left leg were normal and showed no evidence of deep vein thrombosis or blood clot formation. (Tr. 161, 167.) She was seen on October 20, 2006 at the St. Francis Medical Center Wound Healing Center because her leg was not healing well. (Tr. 228-29.) The wound was cleaned and debrided. She was advised to lose weight and to bring her diabetes under better control. (Tr. 229.) Anthony Zoffuto, M.D., noted that plaintiff continued to smoke and was not interested in quitting. (Tr. 231, 245.) By December 15, 2006, her leg wound was healing well and Dr. Zoffutto was certain it would continue to do so. (Tr. 245.)

Joan Singer, Ph.D., a state agency reviewing psychologist, completed a Psychiatric Review Technique form on December 26, 2006. (Tr. 247-57.) She noted plaintiff had a diagnosis of anxiety and depression but that plaintiff reported minimal limitations in daily activities due to anxiety and depression. (Tr. 257.) After evaluating the evidence of record, Dr. Singer concluded that plaintiff had no severe mental impairments. (Tr. 247.) She opined that plaintiff had "mild" restrictions of activities of daily living; "mild" difficulties in maintaining social functioning; no difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. (Tr. 255.) Dr. Singer noted that her depression and anxiety were controlled with medication and that she had not pursued any psychological treatment. (Tr. 257.)

On March 3, 2008, Vicki Roberts, M.D., of Crosstrails Medical Center wrote a letter for plaintiff stating that she had impairments of bipolar disorder, diabetes mellitus, hypertension, hyperlipidemia, hypothyroidism, and other medical problems. Dr. Roberts encouraged the agency to grant plaintiff's disability application. (Tr. 258.)

**Testimony at the Hearing**

On March 18, 2008, a video hearing was conducted before an ALJ. (Tr. 22-59.) Plaintiff waived her right to be represented by counsel at the hearing. (Tr. 25, 84.) She testified to the following.

She was 52 years old and lived with her husband and two children (Tr. 23-24.) She completed high school. (Tr. 32.) She is 5 feet 4 inches tall and her weight varies from 214 to 232 pounds. (Tr. 29.) In 2004 and 2005 she worked part-time as a farmhand, but had no other work experience in the previous 15 years. (Tr. 33, 35.)

She has multiple impairments, including diabetes, asthma, Chronic Obstructive Pulmonary Disease (COPD), bipolar disorder, fibromyalgia, back pain, and blackouts. (Tr. 38-45, 52-54.) Her diabetes is under control and she has not sought treatment for her back pain. (Tr. 38, 46.) She used to smoke three packs of cigarettes per day. (Tr. 36.) She is trying to quit smoking, but still smokes half a pack of cigarettes a day. (Tr. 56-67.) Ibuprofen reduces her pain, but causes nausea. (Tr. 49.) Some of her medications cause dizziness. (Tr. 52.) As to her daily activities, she is able to cook, wash dishes, and do laundry, although her son does a lot of the housework and she did not know what she would do without him. (Tr. 30, 46-47.) She is not able to sit, stand, or walk for long periods of time and is unable to lift more than 20 pounds. (Tr. 36-37, 47, 55.) She has been suicidal in the past, but had no active plans at the time. (Tr. 41.)

### III. DECISION OF THE ALJ

On April 25, 2008, the ALJ issued an unfavorable decision. (Tr. 10-21.) The ALJ determined that plaintiff had the medically determinable impairments of diabetes mellitus, hypertension, and obesity, but that she did not have a severe impairment or combination of impairments. (Tr. 15-21.) Thus, the ALJ determined that plaintiff was not disabled at Step Two of the sequential evaluation process. (Tr. 13.)

### IV. GENERAL LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and is supported by substantial evidence in the record as a whole. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the

Commissioner's conclusion." Id. In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. Id. As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove he is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A), 1382c(a)(3)(A); Pate-Fires, 564 F.3d 935, 942. A five-step regulatory framework is used to determine whether an individual qualifies for disability. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing the five-step process); Pate-Fires, 564 F.3d at 942.

Steps One through Three require the claimant to prove (1) she is not currently engaged in substantial gainful activity, (2) she suffers from a severe impairment, and (3) her disability meets or equals a listed impairment. Pate-Fires, 564 F.3d 935, 942. If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Id. Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform her past relevant work (PRW). (Id.) The claimant bears the burden of demonstrating she is no longer able to return to her PRW. Id. If the Commissioner determines the claimant cannot return to PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work. Id.

In this case, the Commissioner determined that plaintiff did not suffer from any severe impairments, and ended the analysis at Step Two.

## V. DISCUSSION

Plaintiff argues generally that the ALJ's decision is not supported by substantial evidence. This court disagrees.

At Step Two of the evaluation process, the ALJ must determine if a claimant suffers from a severe impairment. Kirby v. Astrue, 500 F.3d 705, 707-08 (8th Cir. 2007). The claimant bears the burden of proving her impairment or combination of impairments is severe, but the burden is not a heavy one, and any doubt concerning whether the showing has been made must be resolved in favor of the claimant. Id.; Dewald v. Astrue, 590 F. Supp. 2d 1184, 1199 (D.S.D. 2008). "Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard. . . ." Kirby, 500 F.3d at 707; see also Germany-Johnson v. Comm'r of Soc. Sec., 313 Fed. App'x 771, 774 (6th Cir. 2008) (per curiam) ("[S]tep-two severity review is used primarily to screen out totally groundless claims.").

An impairment is not severe if it amounts to only a slight abnormality and does not significantly limit the claimant's physical or mental ability to do basic work activities. Kirby, 500 F.3d at 707; 20 C.F.R. § 404.1521(a). Basic work activities concern the abilities and aptitudes necessary to perform most jobs. 20 C.F.R. § 404.1521(b). Examples of basic work activities include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. Id. The sequential evaluation process ends at Step Two if the impairment has no more than a *minimal* effect on the claimant's ability to work. Kirby, 500 F.3d at 707; Hudson v. Bowen, 870 F.2d 1392, 1396 (8th Cir. 1989).

Applying this standard here, the record evidence indicates the ALJ's evaluation of the severity of plaintiff's impairments is supported by substantial evidence. The ALJ properly evaluated the evidence of record and determined that plaintiff's allegations of severe and disabling limitations were not credible. The ALJ's credibility determination shows a consideration of the factors for evaluating subjective allegations in accordance with Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), and the regulations at 20 C.F.R. § 416.929. The

ALJ gave full consideration to all evidence relating to the plaintiff's subjective complaints, including her prior work records; observations by third parties and physicians regarding her disability; her daily activities; the duration, frequency, and intensity of her pain; precipitating and aggravating factors; dosage, effectiveness and side effects of medications; and her functional restrictions. (Tr. 17-21.)

"If an ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so, [the court] will normally defer to that judgment." Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir. 2001) (quoting Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990)). The ALJ evaluated plaintiff's impairments in accordance with the sequential evaluation process and concluded that plaintiff's allegations were inconsistent with the evidence of record. (Tr. 17-21.) Specifically, the ALJ found that plaintiff's allegations were inconsistent with her poor work record, demeanor at the administrative hearing, and consistently normal medical findings. (Tr. 17-21.)

The ALJ properly considered her work record as one aspect of his credibility analysis. (Tr. 21.) The ALJ noted that plaintiff had no posted earnings from 1981 through 2003, and only minimal earnings as a farmhand in 2004 and 2005. (Tr. 21, 95.) See Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001)("a lack of work history may indicate a lack of motivation to work rather than a lack of ability"); Woolf v. Shalala, 3 F.3d 1210, 1214 (8th Cir. 1993) (claimant's credibility is lessened by a poor work history)). See also Comstock v. Chater, 91 F.3d 1143, 1147 (8th Cir. 1996) (plaintiff's prior work history characterized by fairly low earnings and significant breaks in employment casts doubt on credibility). Therefore, this court concludes the ALJ properly considered plaintiff's sparse work record in evaluating her credibility. (Tr. 16.).

The ALJ also noted that plaintiff was alert and oriented at her administrative hearing, and appeared in no physical or mental distress. (Tr. 18.) "The ALJ's personal observations of the claimant's demeanor during the hearing is completely proper in making credibility determinations." Johnson v. Apfel, 240 F.3d 1145, 1147-48 (8th Cir.

2001). Therefore, the ALJ properly found that plaintiff's normal appearance at the administrative hearing was inconsistent with her complaints of severe physical and mental impairments. (Tr. 18.)

Further, with respect to credibility, the ALJ properly recognized that there was scant medical evidence supporting plaintiff's allegations of severe impairments. Plaintiff argues that the ALJ erred in noting that there was no objective evidence to support her allegations. Although a claimant's allegations may not be rejected based solely on the lack of objective medical evidence, it is a factor the ALJ may consider as one part of the credibility analysis. See Forte v. Barnhart, 377 F.3d 892, 895 (8th Cir. 2004). Accordingly, the ALJ properly considered the lack of supporting documentary evidence in evaluating plaintiff's impairments.

Specifically, the ALJ properly recognized that the medical record evidence consistently showed that plaintiff's mental condition was not severe. (Tr. 150, 152, 159, 166, 180, 182, 184, 186, 188, 190, 192, 195, 197, 203, 205, 207, 212.) Dr. Singer, a state agency reviewing psychologist, also opined that plaintiff's mental limitations were not severe. (Tr. 247.) These medical findings are inconsistent with plaintiff's allegations of severe mental impairments and indicate that her impairments were not as severe as alleged.

The ALJ also recognized that there was no record evidence documenting that plaintiff ever sought mental health treatment. (Tr. 20.) See Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000)(the absence of any evidence of ongoing counseling or psychiatric treatment disfavors a finding of disability). As the record evidence shows that her psychological status was normal, and plaintiff did not provide medical evidence documenting any psychiatric treatment, the court concludes the ALJ properly determined that plaintiff had no severe mental impairments.

The ALJ also found that plaintiff failed to present evidence supporting her allegations of disabling physical impairments. (Tr. 18-20.) For example, while plaintiff complained of severe impairments of asthma and COPD, the record showed that plaintiff had consistently normal breath sounds, clear lungs, and was in no respiratory distress. (Tr. 150-51, 153, 159, 175, 187, 189, 192, 194, 198, 202, 204, 206, 211,

229, 238.) Additionally, plaintiff continued to smoke despite complaints of breathing problems and repeated doctors' orders to quit. (Tr. 20.) See Wheeler v. Apfel, 224 F.3d 891, 895 (8th Cir. 2000) (noting that claimant smoked two packs of cigarettes per day, despite complaints of asthma and despite directions to quit by a treating physician); See also Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir.1997) (impairments that are controllable or amenable to treatment, including certain respiratory problems, do not support a finding of disability, and failure to follow a prescribed course of remedial treatment, including the cessation of smoking, without good reason is grounds for denying an application for benefits). Therefore, plaintiff's normal respiratory findings and failure to quit smoking support the ALJ's determination that her asthma and COPD were not severe.

The record evidence also supports the ALJ's determination that plaintiff's back pain was not severe. Plaintiff's back examinations were normal and her extremities were non-tender. (Tr. 152, 154, 178, 180, 182, 184, 186, 188, 190, 195, 205, 207, 212.) She had a normal gait, normal range of motion, and no motor or sensory deficits. (Tr. 149, 152, 154, 180, 184, 188, 195, 197, 200, 203, 205, 212.) Plaintiff also admitted that she had not sought any treatment for her back pain. (Tr. 38.) Plaintiff's failure to seek treatment, and her normal back examinations, contradict her complaints of a severe impairment and support the ALJ's credibility determination. See Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997).

The ALJ also properly considered plaintiff's allegations of severe obesity, hypertension, and fibromyalgia, determining that plaintiff presented no evidence to support her complaints. Plaintiff does not allege, nor does the record reveal, any limitations resulting from her obesity. (Tr. 18.) Similarly, the record shows that when plaintiff was compliant with her medication, her blood pressure was controlled. (Tr. 158, 181, 185, 189, 194, 196, 211.) As to plaintiff's allegations of severe fibromyalgia, the record reveals no evidence of any trigger points

or joint or muscle abnormalities.[3] Plaintiff failed to provide evidence showing that these impairments were severe. Accordingly, the ALJ properly determined that plaintiff's allegations were not credible. (Tr. 17-21.)

With respect to diabetes, plaintiff admitted at her administrative hearing that her diabetes was controlled. (Tr. 46.) If an impairment can be controlled by treatment or medication, it cannot be considered disabling. See Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010). Additionally, plaintiff has failed to cite any evidence that her diabetes limited her ability to perform basic work activities. Therefore, the ALJ properly determined that plaintiff's diabetes was not severe.

The ALJ also properly assigned little weight to Dr. Roberts's opinion that plaintiff's disability application should be granted. (Tr. 19, 258.) See Loving v. Dept. of Health & Human Servs., 16 F.3d 967, 971 (8th Cir. 1994)(a physician's conclusory statement of disability without supporting evidence does not overcome substantial medical evidence supporting the Commissioner's decision). Cf. Goff v. Barnhart, 421 F.3d 785, 790-91 (8th Cir. 2005)(a finding of inconsistency with other evidence is sufficient to discard a treating physician's RFC). Here, as outlined above, the ALJ properly evaluated the evidence of record and determined that Dr. Roberts's opinion was conclusory and inconsistent with plaintiff's medical records. As Dr. Roberts' opinion was inconsistent with the evidence of record, the ALJ properly assigned her opinion little weight.

Plaintiff argues the ALJ failed to consider the side effects of her medication or her testimony that her son performed most of the household chores. However, the ALJ specifically recognized plaintiff's testimony regarding her medications and limited activities. (Tr. 17.) The ALJ determined, however, based on the above-outlined evidence, that plaintiff's allegations were not credible.

---

[3]Fibromyalgia is a common syndrome of chronic widespread soft-tissue pain accompanied by weakness, fatigue, and sleep disturbances; the cause is unknown. A patient must have at least 11 out of 18 tender spots to be diagnosed as having fibromyalgia. Stedman's at 725.

Plaintiff lastly argues that the ALJ used the wrong standard in evaluating her credibility.  When a plaintiff claims that the ALJ failed to properly consider her subjective complaints, the duty of the court is to ascertain whether the ALJ considered all the evidence under the Polaski standards.  See Masterson v. Barnhart, 363 F.3d 731, 738-739 (8th Cir. 2004).  Here, the ALJ properly acknowledged and considered the Polaski factors and determined that Plaintiff's allegations were not fully credible.  (Tr. 16-21.)

The ALJ evaluated the record evidence and concluded that plaintiff's allegations of severe and disabling impairments were inconsistent with her work record, demeanor, and medical records.  Because the ALJ articulated the inconsistencies on which he relied in discrediting her subjective complaints, and because that finding is supported by substantial evidence, the ALJ's decision is affirmed.  See Hamilton v. Astrue, 518 F.3d 607, 613 (8th Cir. 2008).

Plaintiff bears the burden of showing that her mental impairments are severe.  She failed to meet that burden here.  After considering plaintiff's limitations and all the record evidence, this court concludes the ALJ correctly found that plaintiff's impairments imposed no more than mild limitations in her ability to function.  As plaintiff failed to establish that her impairments significantly limit her ability to do basic work, the ALJ properly determined that they were not severe.  See 20 C.F.R. § 416.920(a)(4)(ii).  This court concludes substantial evidence on the record as a whole supports the Commissioner's decision.  Accordingly, the Commissioner's decision is affirmed.

## VI.  CONCLUSION

For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed.

An appropriate judgment order is issued herewith.

　　　　　　　　　　　　　　　　　　　／S／　　David D. Noce　　　　
　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**

Signed on August 8, 2011.